UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| AUDREY GRAHAM; | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 18-CV-508-TCK-FHM |
| DR. ROBERT ZOELLNER, an individual; PHILIP ZOELLNER, an individual; ROBERT BOATRIGHT, O.D., an individual; CASEY SWIFT, O.D., an individual; LIPHARD D'SOUZA, M.D., an individual ZOELLNER MEDICAL GROUP; ZOELLNER GROUP, L.L.C.; A to Z MADISON MEDICAL; and DR. Zzzz's SLEEP CENTER, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) filed by (1) A to Z Madison Medical; (2) Ronald Boatright; (3) Liphard D'Souza; (4) Dr. Zzzz's Sleep Center; (5) Casey Swift; (6) Zoellner Group; L.L.C.; (7) Zoellner Medical Group; (8) Philip Zoellner; and (9) Robert Zoellner. (Doc. 8.) For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**.

### I.  Factual Background

Plaintiff Audrey Graham ("Plaintiff") began working for "Defendants" in February 2008. (Doc. 2-1, ¶ 14, 15.) Throughout her employment, Phillip Zoellner ("Zoellner"), an owner of "Defendants," made sexual comments about Plaintiff's body. For example, in their first meeting, Zoellner commented "damn it, shit, you are a hot, thin, big-boobed blonde." (Doc. 2-1, ¶ 15.) He also told Plaintiff that he "understood" why her husband might not be attracted to her because of her weight, and repeatedly questioned her regarding her daughter's weight. (Doc. 2-1, ¶ 25, 27.)

1

Zoellner also repeatedly commented about other women's appearances. For example, on or about 2011, Zoellner hired a female employee to assist Plaintiff in performing her job duties. However, he told Plaintiff that he only hired the new employee because she was "cute" and she "asked him about his band." (Doc. 2-1, ¶ 18.) Later, in 2013, while Plaintiff and another employee worked with a client, Zoellner saw the other employee's lower back butterfly tattoo and told her to "shake your ass to make the wings move." (Doc. 2-1, ¶ 32.) In 2015, Zoellner hung up an erotic picture of a woman bending over in his office. He refused to remove the picture, despite several requests from employees, though his wife eventually intervened to remove it. (Doc. 2-1, ¶ 34.) In 2016, Zoellner told Plaintiff that another female employee was dumb, and that the only reason he employed her was because of her looks. (Doc. 2-1, ¶ 35.) Finally, somewhere between 2016-2017, Zoellner instructed female employees to wear short, tight skirts and push up bras "to make their boobs stand out for the other physicians." (Doc. 2-1, ¶ 37.)

In addition to these comments, Zoellner also made sexual comments about his own body and required physical affection from his female employees. For example, Zoellner bragged to female employees about the size of his penis. (Doc. 2-1, ¶ 45.) He also showed the entire office a picture of a sausage placed over his groin. (Doc. 2-1, ¶ 23.) Zoellner also joked that the staff kept the office warm so that he, Zoellner, could strip for them. He required Plaintiff and other employees to give him "front hugs," which he called "boobie hugs," and repeatedly required female employees to say that they loved him. (Doc. 2-1, ¶ 16, 21, and 28.) Finally, on July 11, 2014, Zoellner attended one of his employee's bachelorette party, despite not being invited. The following day, in the early hours of the morning, Zoellner groped Plaintiff's breast without permission or consent. (Doc. 2-1, ¶ 29, 30.)

On July 24, 2017, Zoellner told Plaintiff that if she didn't "start showing him more affection," then she would be terminated. (Doc. 2-1, ¶ 39.) On August 2, 2017, Zoellner told

2

Plaintiff and other employees that they looked "like shit" in front of other employees. (Doc. 2-1, ¶ 20.) Finally, on September 11, 2017, Zoellner required Plaintiff to start working nights or be fired. (Doc. 2-1, ¶ 40.) Six days later, on September 17, 2017, Plaintiff reported these threats to Ronald Boatright. (Doc. 2-1, ¶ 41.) The next day, Plaintiff and Ronald Boatright met with Zoellner to discuss Zoellner's behavior throughout Plaintiff's employment with her employer. Zoellner, however, told Plaintiff to begin working from home until he could replace and fire her. (Doc. 2-1, ¶ 42.) Four days later, on September 22, 2017, an employee called Plaintiff to inform her that she was terminated. (Doc. 2-1, ¶ 43.)

Plaintiff filed an EEOC charge on March 15, 2018. (Doc. 8-1.) In it, Plaintiff listed her employer as Dr. Zzz's (sic) Sleep Center. She also listed the dates of discrimination as September 22, 2016 to September 22, 2017, but noted in the text of her EEOC Charge that she began her work at Dr. Zzz's (sic) Sleep Center in 2008 and that "[d]uring [her] employment, [she] was subjected to unwelcome verbal and physical sexual harassment from Mr. Phillip Zoellner." (Doc. 8-1, pg. 1.) She also describes the comments that Zoellner made "on a daily basis," including detailed commentary on his employees' appearances. (Doc. 8-1.)

Plaintiff filed her Petition ("Complaint") in the District Court of Tulsa County on September 10, 2018 (Doc. 2-1), and Defendants removed it to this Court on October 11, 2018 (Doc. 2). In her Complaint, Plaintiff brings claims for (1) Fourteenth Amendment violations against all Defendants, (2) sexual harassment, sexual discrimination, and retaliation under Title VII and OADA, against all Defendants, (3) Interference with Economic Relationships, against all Defendants, (4) Battery, against Phillip Zoellner, (5) Negligent Infliction of Emotional Distress, against all Defendants, and (6) Intentional Infliction of Emotional Distress, against all Defendants.

3

## II. Rule 12(b)(6) standard

All Defendants have filed a Motion to Dismiss under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In considering a motion to dismiss under Rule 12(b)(6), the Court generally may not consider facts outside of those alleged in the complaint.

---

[1] While Oklahoma law controls the resolution of some of the substantive issues presented in this lawsuit, the Federal Rules of Civil Procedure and federal case law govern the sufficiency of Plaintiff's Complaint. Accordingly, the Court will disregard Plaintiff's citations to, and reliance on, the Oklahoma pleadings standards in determining whether Plaintiff has stated a claim upon which relief can be granted.

**III. Fourteenth Amendment**

"A violation of the Fourteenth Amendment requires action by the state." *Hall v. Witterman*, 584 F.3d 859, 864 (10th Cir. 2009). Plaintiff has not alleged any state action. Accordingly, Plaintiff has failed to state a Fourteenth Amendment claim.

**IV. Title VII and OADA**

**A. Petition has not asserted claims outside the EEOC charge**

Both Title VII and OADA require that a plaintiff exhaust administrative remedies, by filing a charge of discrimination against a party, before filing suit against that party. *See* 42 U.S.C. § 2000e-5(e)(1); 25 O.S. § 1350(B); *Tolbert v. EAN Servs., LLC*, No. 15-cv-735-GKF-TLW, 2016 U.S. Dist. LEXIS 23690, *7 (N.D. Okla. Feb. 26, 2016). Due to the exhaustion requirement, after a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164-65 (10th Cir. 2018). However, the Court will "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Id.*, citing *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

Defendants argue that Plaintiff's Complaint asserts claims that are outside her EEOC charge, as her EEOC Charge states that the discrimination took place between September 22, 2016 and September 22, 2017, but her Complaint alleges events dating back to 2008. However, in light of the Court's obligation to construe Plaintiff's EEOC Charge liberally, the Court finds that Plaintiff has exhausted her administrative remedies as to alleged sex discrimination and retaliation. Though Plaintiff did list the dates of discrimination as September 22, 2016 to September 22, 2017, she also stated in the text of her charge that she began work in 2008, and that "[d]uring [her]

5

employment, [she] was subjected to unwelcome verbal and physical sexual harassment from Mr. Phillip Zoellner." (Doc. 8-1, pg. 1.) She also describes the comments that Zoellner made "on a daily basis," including detailed commentary on his employees' appearances. Accordingly, the Court finds that the administrative investigation that can reasonably be expected to follow from Plaintiff's EEOC charge would include events dating back to 2008, as described in her charge. Accordingly, Plaintiff has exhausted her administrative remedies.

B.  **Title VII and OADA do not allow claims against individuals**

Title VII and OADA liability extend to employers only, and not to supervisors and other employees. *See Fulton v. People Lease Corp.*, 2010 OK CIV APP 84, 241 P.3d 255, 261 (Okla. Civ. App. 2010); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.1 (10th Cir. 2007). Plaintiff appears to concede that her Title VII and OADA claims are not applicable against the individual defendants. (Doc. 9, pg. 6-7.) Accordingly, Plaintiff has failed to state a claim under Title VII and OADA as to Robert Zoellner, Philip Zoellner, Ronald Boatright, Casey Swift, and Liphard D'Souza.

C.  **Plaintiff has not pled her employer**

Because Title VII and OADA liability extends only to employers, Plaintiff must plead the identity of her employer and relevant supervisors at that employer to state a claim upon which relief can be granted. In this case, though Plaintiff's EEOC Charge lists her employer as "Dr. Zzz's (sic) Sleep Center," her Complaint more generally alleges that Plaintiff worked for "Defendants," and does not distinguish between Dr. Zzzz's Sleep Center and the other corporate Defendants. Plaintiff, however, argues that the corporate Defendants are "so intertwined that they are in essence one company." (Doc. 9, pg. 6.) Under some circumstances, Courts may treat separate entities as a single employer for the purposes of Title VII and OADA liability. *See Avington v. Metro. Tulsa Urban League*, 603 F. App'x 662, 663 (10th Cir. 2015). Because Plaintiff

has alleged that the companies are effectively one company, the Court must apply the "single employer" test to determine if the corporate Defendants may be treated as a single employer for the purposes of Title VII and OADA liability. *See Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017) (OADA is analyzed similarly to Title VII claims); *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226-27 (10th Cir. 2014) (single employer test).

The single-employer test looks to the relationship between the corporate entities themselves to determine whether they should be treated as an integrated enterprise. *Id.* In doing so, the Court weighs four factors: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. In this case, however, Plaintiff has neither pled nor argued sufficient facts to allow the Court to weigh these factors. Plaintiff has pled no relevant facts and argues only that all corporate Defendants are located in "the Zoellner Center," a building located at 3020 South Harvard Ave., Tulsa, OK 74114, and were engaged in the same business of providing medical services, medical products, and help sleeping. (Doc. 9, pg. 6.) This argument is not sufficient for the Court to evaluate any of the four factors in the single-employer test, and accordingly, the Court cannot find that all corporate Defendants were a single employer for the purposes of Title VII and OADA. Accordingly, Plaintiff's Title VII and OADA claims are dismissed against A to Z Madison Medical, Zoellner Group, LLC and Zoellner Medical Group.

Moreover, because Plaintiff has not attached her EEOC Charge as an exhibit to her Complaint, the Court may take judicial notice of the EEOC Charge, as a public record, but may not regard it as part of the pleadings. *See Tal v. Hogan*, 453 F.3d 1244, 12-64-65 n.24 (10th Cir. 2006). When the Court takes judicial notice of a public record, it may only consider the record to show its contents, not the truth of those contents. *Id.* Accordingly, in this case, the Court may not consider the contents of the EEOC Charge in evaluating whether Plaintiff has stated a claim upon

which relief can be granted. Without the substance of the EEOC Charge, however, Plaintiff has not alleged the identity of her employer, nor that either her harasser, Zoellner, or the person to whom she reported his harassment, Ronald Boatright, were her supervisors at that employer. Without those allegations at a minimum, Plaintiff cannot state a claim upon which relief can be granted as to Dr. Zzzz's Sleep Center. Plaintiff's Title VII and OADA claims are dismissed as against Dr. Zzzz's Sleep Center.

### D.  OADA does not bar all state law claims

OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of . . . sex . . . " OKLA. STAT. tit. 25 sec. 1101(A). However, employees who suffer "highly personal" wrongs, distinct from employment discrimination claims, may invoke common law remedies to those wrongs even if they arise from the same set of facts as the employee's Title VII or OADA claims. *See Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017), applying *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995). To determine whether a plaintiff's common law claims seek recovery for employment discrimination or separate, highly personal, wrongs, the Court will look to the elements of the two claims. *Id.* Accordingly, OADA is not a per se bar against Plaintiff's common law claims.

## V.  State law claims

### A.  Interference with an Economic Relationship

Assuming, *arguendo*, that Plaintiff alleged a claim of quid pro quo sexual harassment,[2] she may not bring a separate claim for interference with an economic relationship, as the elements of

---

[2] There is no hard line between quid pro quo sexual harassment and hostile workplace sexual harassment, as they are both "shorthand descriptors to delineate different ways in which sexual harassment can occur." *See Jones v. Needham*, 856 F.3d 1284, 1291 (10th Cir. 2017). However, the quid pro quo terminology is appropriate where tangible employment action, such as termination, has occurred. *Id.*

the tort are substantially similar to those of the employment claim. *See Jones v. Needham*, 856 F.3d 1284, 1291 (10th Cir. 2017) (holding that the elements of the claim for tortious or malicious interference are "remarkably similar" to the elements of a quid pro quo form for sexual harassment).

    B.    **Battery**

A civil action for battery must be filed within one year of the cause of action accruing. *See* OKLA. STAT. tit. 12 sec. 95. A cause of action accrues when a plaintiff can first successfully maintain her action—when all elements of a successful cause of action have occurred. *See Kiamichi Elec. Coop. v. Underwood*, 1992 OK CIV APP 72, 842 P.2d 358, 359 (Okla. Civ. App. 1992). In a tort claim for battery, the following elements must occur: (1) the defendant, without the consent of the plaintiff, acted either with the intent of making a harmful or offensive contact with the plaintiff's person or with the intent of putting the plaintiff in apprehension of such a contact, and (2) the defendant's act resulted in a harmful or offensive contact with the plaintiff. OUJI 19.6. In this case, Plaintiff alleges that Zoellner groped her breast without permission or consent on July 12, 2014. Accordingly, her cause of action for battery accrued on that date. However, Plaintiff did not file the instant action until September 10, 2018, well outside the one-year statute of limitations. Accordingly, Plaintiff has not stated a claim upon which relief can been granted as to her battery claim.

Plaintiff argues that her action for battery did not accrue until she received her right to sue letter from the EEOC. However, Plaintiff has cited no authority to support this position, which misunderstands the nature of the EEOC's pre-litigation process. The requirement that a plaintiff obtain a right to sue letter before filing suit is part of the exhaustion requirements of Title VII and OADA, and does not extend to any tort claims that arise out of the same set of facts. *See* supra, IV. A. Indeed, because Plaintiff's battery claim would only be permitted to proceed if it

represented a highly personal wrong that is distinct from her Title VII and OADA claims, receipt of a right to sue letter cannot be what causes her battery claim to accrue.

### C. Negligent Infliction of Emotional Distress

In Oklahoma, negligent infliction of emotional distress is not an independent tort, but rather is the tort of negligence. Accordingly, to survive a motion to dismiss, a plaintiff must state a claim upon which relief can be granted in consideration of the traditional elements of negligence: duty, breach of duty, causation, and damages. *See Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (summarizing Oklahoma law). To the extent that Plaintiff seeks recovery based on a theory of negligence for damages associated with her termination, the Court finds that the elements of negligence are substantially similar to the elements of Plaintiff's retaliation claim, where the alleged duty is to refrain from terminating an employee after she engaged in protected activity.

By contrast, to the extent that Plaintiff makes a negligence claim associated with the conduct she endured while employed by her employer, Plaintiff has not stated a claim upon which relief can be granted, as she has alleged no physical suffering. In Oklahoma, damages for mental anguish are recoverable only if they are "produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish." *Id.*, citing *Ellington v. Coca Cola Bottling Co. of Tulsa*, 1986 OK 11, 717 P.2d 109, 111 (Okla. 1986). By contrast, Plaintiff has alleged "future dignitary harms in the form of embarrassment, worry, humiliation and like emotions" without any tether to a related physical suffering or injury. Accordingly, even if the Court assumes, *arguendo*, that such negligence is a highly personal wrong that is distinct from Plaintiff's employment claims, Plaintiff has not stated a claim upon which relief can be granted.

### D. Intentional Infliction of Emotional Distress

In order to state a claim for Intentional Infliction of Emotional Distress ("IIED"), a plaintiff must allege facts showing: (1) the defendant's conduct was intentional or reckless; (2) the

defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law). IIED does not provide redress for every invasion of emotional serenity or every anti-social act that may produce hurt feelings. *Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998). Rather, the emotional distress must be so severe that no reasonable person could be expected to endure it. *See Robbins Motorsports, L.L.C. v. Nat'l Fire & Marine Ins. Co.*, No. CIV-10-245, 2011 U.S. Dist. LEXIS 59365, *12-13 (N.D. Okla. June 3, 2011) (internal citations omitted). Oklahoma law directs the district court to act as a "gatekeeper" and make an initial determination about the outrageousness of the defendant's conduct, as well as whether severe emotional distress can be found, before sending the claim to a jury. *See Bingaman v. Spirit Aerosystems, Inc.*, No. 14-CV-677-GKF, 2015 U.S. Dist. LEXIS 183267, at *9 (N.D Okla. Feb. 4, 2015) (evaluating a motion to dismiss); *Johnson v. ORS Nasco, LLC*, No. 13-CV-777-JED, 2014 U.S. Dist. LEXIS 197073, *4 (N.D. Okla. Sept. 30, 2014) (evaluating a motion to dismiss).

Plaintiff has failed to state a claim for IIED, as Plaintiff has failed to allege that Defendants conduct caused her severe emotional distress. Though Plaintiff has made general, conclusory allegations that she has suffered "future dignitary harms in the form of embarrassment, worry, humiliation and like emotions," she "does not set forth any facts regarding [her] mental or emotional state, much less distress which 'is so severe that no reasonable [person] could be expected to endure it.'" *See Robbins Motorsports, L.L.C.*, 2011 U.S. Dist. LEXIS 59365, *12-13 (internal citations omitted). Accordingly, Plaintiff has failed to state a claim upon which relief can be granted as to her IIED claim.

## VI.   Leave to Amend

"Dismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile." *See Rosenfield v. HSBC Bank*, 681 F.3d 1172, 1189 (10th Cir. 2012) (internal citations omitted). Leave to amend is futile when the complaint, as amended, would be subject to dismissal. *See Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). In this case, the Court holds that leave to amend would be futile as to (1) Plaintiff's Fourteenth Amendment claims against all Defendants; (2) Plaintiff's Title VII and OADA claims against Robert Zoellner, Phillip Zoellner, Ronald Boatright, Casey Swift, and Liphard D'Souza; (3) Plaintiff's Interference with an Economic Relationship claims against all Defendants, (4) Plaintiff's Battery claim against Phillip Zoellner, and (5) Plaintiff's negligence claim as to damages associated with her termination, against all Defendants. These claims all fail at threshold issues, not because the Plaintiff has failed to allege sufficient facts to state a claim upon which relief can be granted. The Court has no basis to conclude that in an Amended Complaint, Plaintiff will be able to allege state action to support a Fourteenth Amendment claim, or overcome the legal barriers to asserting individual liability claims under Title VII and OADA, or a duplicative or time-barred tort claims. Accordingly, these claims are dismissed with prejudice.

However, the Court holds that leave to amend would not be futile as to (1) Plaintiff's Title VII and OADA claims against A to Z Madison Medical, Zoellner Group, LLC, Zoellner Medical Group, and Dr. Zzzz's Sleep Center; (2) Plaintiff's claim for negligence associated with conduct she endured while employed by her employer, against all Defendants; and (3) Intentional Infliction of Emotional Distress against all Defendants. The Court has found that Plaintiff failed to state a claim upon which relief can be granted as to these claims because they are supported by insufficient or conclusory allegations. However, because Plaintiff originally pled these claims under the more lenient Oklahoma state court standard, the Court has no basis to conclude that she could not, once

in federal court, plead sufficient facts to state a claim upon which relief can be granted. *Compare Rogers v. QuikTrip Corp.*, 2010 OK 3, 230 P.3d 853, 856 (Okla. 2010) (state court standard) with *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (federal court standard). Accordingly, Plaintiff is granted leave to amend as to these claims and may file an Amended Complaint within thirty (30) days of this Order.

All deadlines in the Amended Scheduling Order (Doc. 26) are stricken and the Amended Scheduling Order is hereby vacated. Should Plaintiffs file an Amended Complaint, the Parties shall prepare and file a Joint Status Report within thirty (30) days of that Amended Complaint being filed.

**SO ORDERED** this 22nd day of May, 2019.

**TERENCE C. KERN**
**United States District Judge**